## 32456. GODFREY v. GODFREY.

Bowles, Justice.

This is an appeal from the granting of a change of child custody in the Superior Court of Cobb County.

The parties were divorced in March, 1976, and the appellant, Mrs. Godfrey, awarded custody of the couple's only child. A complaint was filed on November 3, 1976, wherein the appellee, Mr. Godfrey, alleged that a substantial change in conditions affecting the welfare of the minor child had occurred since the final judgment and decree had been entered.

The case was heard before a Judge of the Superior Court of Cobb County at which time evidence was introduced which clearly showed that appellant had been living with a married man in her home for several months subsequent to the divorce. The evidence further showed that appellant's relationship with her consort had on several occasions interfered with appellee's visitation rights.

After hearing all the evidence the court concluded that the appellant in opening up her home and creating a family relationship with a married man and in living with this man in a state of adultery in the presence of the child created a substantial change which affected the welfare of the child and warranted a change of custody to the appellee.

In her appeal to this court, the appellant enumerates as error the trial court's verdict that there were changed conditions in the appellant's home which had an adverse effect upon the parties' minor child in that this verdict was unsupported by the evidence and was an abuse of the

trial court's discretion. In *Robinson v. Ashmore,* 232 Ga. 499, 500 (207 SE2d 484) (1974), this court stated, "Changed conditions affecting the welfare of a child occurring after the rendition of a formal final custody judgment which will warrant the issuance of a new judgment by habeas corpus court effecting a change of custody or visitation rights is essentially a fact issue in each individual case which must be decided by the habeas corpus court. And if there is 'reasonable evidence' in the record to support the decision made by the habeas corpus court in changing custody or visitation rights, then the decision of the habeas corpus court must prevail as a final judgment, and it will be affirmed on appeal."

We have carefully reviewed the evidence in this case and after finding that there was "reasonable evidence" in the record to support the verdict we cannot say that the trial court abused its discretion in changing custody of the minor child to the appellee.

*Judgment affirmed. All the Justices concur, except Hall, J., who dissents.*

ARGUED JULY 11, 1977 — DECIDED SEPTEMBER 7, 1977 — REHEARING DENIED SEPTEMBER 28, 1977.

*Duard R. McDonald, Don Smith,* for appellant.

*Barnes & Browning, Thomas J. Browning, Roy E. Barnes,* for appellee.

HALL, Justice, dissenting.

I dissent from the court's judgment because I find the record on this appeal to be absolutely devoid of evidence that there has been any adverse effect on this three-year-old child flowing from the mother's admitted status of sharing her and her child's home with a married man. I note that the mother's lover moved out of the home some three months prior to the hearing, and there were no definite plans for his return. It is clear to me from reading the transcript of the evidence and of the oral comments of the trial judge, that he was so aghast at evidence of adultery that he failed to exercise any discretion in weighing the factors related to the child's welfare, and

automatically ruled against the adulterous mother. I fear this court has done the same in reflex-type action.

The trial judge admitted that "the father lacks a little drive and he lacks a force of personality and has a poor work history." Indeed, the father's mother, with whom he lives at the age of 29, referred to her son's work history throughout his life, once as "odd jobs," again as "odds and ends," and finally again as "odd jobs." He testified his maximum income is apt to be $70 per week and the longest he has held any job is seven months.

The mother, on the other hand, has worked steadily for years as a legal secretary; maintains the child in the home into which he was born; and has him cared for during her working hours by a woman who has cared for him since he was eight months old and loves him as her own. The mother is involved in many church activities in which the child also participates; her religion is evidently important to her. The trial judge wondered aloud how the mother could claim any religion when she was an adulteress. I do not understand Jesus Christ himself to have been so demanding.

The court's affirmance of this judgment amounts to the establishment of a per se rule: A custodial parent becomes per se an unfit parent if he or she acquires a live-in lover, even though absolutely no adverse effect on the child is shown. I reject such a rule.